U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 FEB 14  AM 11: 33

CLERK

BY _____
    DEPUTY CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF VERMONT

| | |
|---|---|
| Kevin McNaught individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Pinnacle Food Group, LLC<br><br>Defendant. | Case No.: 5:12-cv-168<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

## SECOND AMENDED COMPLAINT

Plaintiff Kevin McNaught ("Plaintiff"), by his designated attorneys, Jared Carter and Kenneth Miller, individually and on behalf of all others similarly situated, hereby submit their second amended complaint to this putative class action against Pinnacle Food Group, LLC ("Defendant"), alleging with the following amendments incorporated:

## AMENDMENTS

Plaintiff requests this Honorable Court's leave to make the following amendments:

1. Remove as Plaintiff the Vermont Community Law Center, Inc., and

2. Remove claims related to Defendant's misrepresentations concerning the product previously referred to as Bird's Eye Frozen Corn. Plaintiff seeks to amend allegations related to Defendant's Bird's Eye Frozen Corn and have changed the tense of paragraphs throughout this Second Amended Complaint to reflect the now single product at issue in this suit and to clarify the Class Action Allegations. Finally, as a result of a legislative name change, Plaintiff has also amended the Complaint so as to correctly refer to the "Vermont Consumer Protection Act" rather than the "Vermont Consumer Fraud Act" throughout the Second Amended Complaint. The following paragraphs have undergone substantial alterations to further the amendments Plaintiffs herein request: 16 – 20; 22, 23, 24, 26, 27, 28,

31, 32 – 42, 46, 51, 52, 53, 54, 58, 60 – 67; 70, 71, 73, 74, 76, 82 – 88, 90, 91, 92, 94, 96 – 100; 103 and paragraphs 1 and 2 of the Plaintiff's Prayer For Relief.

## NATURE OF THE CASE

1. This is a proposed class action for declaratory judgment, injunctive relief, reimbursement of losses and damages, alleging that Defendant's labeling, marketing, advertising and promotion of its products is misleading, inaccurate, and/or deceptive.

2. Defendant's unlawful activities include labeling, marketing, advertising, and promoting its products as "All Natural" when the products contain synthetic ingredients and Genetically Engineered or Genetically modified ingredients or components (collectively referred to as "GE").

3. The term "All Natural" is routinely used by manufacturers to describe a product free from genetically engineered or synthetic ingredients, to denote a healthier choice than competing products, and to justify charging the consumer a premium price for the product.

4. Defendant deceptively promotes and represents Log Cabin Table Syrup as "All Natural," featuring "All Natural" prominently on its label.

5. The central message of Defendants' label is that Log Cabin Table Syrup is derived from 100% all natural ingredients, i.e. ingredients that are naturally occurring and not synthetic or genetically engineered.

6. Defendant advertises Log Cabin on its website as carrying "Authentic Maple and Maple Flavored Syrup."

7. Defendant sells its syrup in clear bottles styled to resemble a log cabin, as well as in an opaque, tan plastic jug with a small round handle and a non-functional "pour spout" lip.

8. Maple sugar producers in Connecticut, Maine, Michigan, New Hampshire, New York, Quebec, and Vermont have used opaque, tan plastic jugs ("the jug") with a small round handle and a non-functional "pour spout" lip to sell pure maple syrup.

9. Log Cabin syrup is marketed as "all natural."

10. No Log Cabin syrups contain more than 4% maple syrup.

11. Defendant commands a premium price for Log Cabin Table Syrup by distinguishing it as "All Natural," and misleadingly packaging it in a bottle that imitates pure maple syrup.

12. By information and belief, Log Cabin Table Syrup is not "All Natural," because it contains synthetic ingredients or materials, including Xanthan Gum, Citric Acid, and Rice Syrup, as well as ingredients that are, or are derived from, genetically engineered or genetically modified sources.

13. Xanthan Gum is recognized by the United States Department of Agriculture ("USDA") as a synthetic substance. *See* 7 C.F.R. § 205.605(b).

14. Despite the fact that GE ingredients do not occur naturally, neither the label nor the ingredient list indicates which ingredients are derived from GE sources.

15. By information an belief, Defendant's Log Cabin Syrup labeled "All Natural" sells fo approximately $5.50 per quart as compared to $2.50 per quart for similar products not labeled "All Natural" and not bottled in a traditional maple syrup bottle.

16. A reasonable consumer's expectation about products labeled "All Natural" is that they do not contain synthetic or GE ingredients.

17. Defendant's labels are misleading and deceptive because they contain the phrase "All Natural" despite the fact that Log Cabin Syrup contains either synthetic ingredients or GE ingredients, materials or products.

18. Plaintiff's claims against the Defendant include: (1) violation of the Vermont Consumer Protection Act, 9 V.S.A. § 2453; (2) Unjust Enrichment; (3) Breach of Express Warranty.

## THE PARTIES

19. Plaintiff Kevin McNaught is a resident of Rutland County, Vermont.

20. Plaintiff has purchased Defendant's Log Cabin Syrup labeled "All natural".

21. Plaintiff bring this putative class action under the laws of Vermont for damages for injuries sustained as a result of Defendant's unfair business practices.

22. Plaintiff relied on Defendant's deceptive and misleading written representation that their product, Log Cabin Syrup, is"All Natural" in deciding to purchase Defendant's products.

Defendants

23. Log Cabin Syrup is a product of Log Cabin, a brand owned by Defendant, Pinnacle Foods Group, a limited liability company based out of Mountain Lakes, New Jersey.

24. Defendant owns a number of nationally-recognized brands in the breakfast table syrup grocery sector, including Mrs. Butterworth, Aunt Jemima, and Log Cabin. Pinnacle owns many other brands of grocery products, including Armour, Duncan Hines, Vlasic, Bird's Eye, Hungry-Man, Lender's Bagels, Van de Kamp's, and Snyder of Berlin.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action on behalf of himself and all other similarly situated persons in the State of Vermont, pursuant to Rule 23 of the Vermont Rules of Civil Procedure. Plaintiff seeks to represent the following class:

26. All Vermont residents who purchased Log Cabin Syrup labeled "All Natural" in the State of Vermont but that contained Xanthan Gum, Citric Acid, Rice Syrup during the last six years prior to the commencement of this suit until such time as the Defendant ceases said practice.

27. All Vermont residents who purchased Log Cabin Syrup labeled "All Natural" in the State of Vermont but that contained GE ingredients or materials.

28. The Class is numerous so that joinder of all members is impracticable. While the exact number of class members is currently unknown and can only be ascertained through appropriate discovery, Plaintiff believes that members of the class exceed one thousand persons.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely pertaining to individual members of the Class. Among questions of law and fact common to the Class are:

(a) Whether the use of the phrase "All Natural" to label, market, advertise, and promote the above indicated product is misleading, and/or inaccurate, and/or deceptive, and/or unfair.

(b) Whether Defendant failed to disclose that the above indicated product is not "All Natural."

(c) Whether Defendant expressed and/or implied that the above indicated product contained only "All Natural" ingredients.

(d) Whether Defendant breached express or implied warranties by using GE ingredients in the above indicated product that they labeled, marketed, and sold as "All Natural."

(e) Whether Defendant has been unjustly enriched as a result of its unlawful business practices.

(f) Whether Defendant's actions as described in this complaint violate the Vermont Consumer Protection Act (hereinafter referred to as "VCPA").

(g) Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, pay damages and pay treble damages as a result of described practices.

30. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct in violation of the VCPA and other causes of action as stated herein.

31. Plaintiff will fairly and adequately protect the interests of the Class members and have retained counsel competent to proceed in class action litigation.

## SUBSTANTIVE ALLEGATONS

32. Defendant manufactures, distributes, markets, advertises, promotes, labels, and sells its "All Natural" Log Cabin Syrup throughout Vermont.

33. Defendant labels and markets Log Cabin Syrup as "All Natural" in Vermont.

34. Defendant's Log Cabin Syrup is not "All Natural" because it contains synthetic ingredients and genetically engineered or genetically modified ingredients

35. Defendant's Log Cabin Syrup labeled "All Natural" contains Xanthan Gum.

36. Xanthan Gum is recognized by the United States Department of Agriculture ("USDA") as a synthetic substance. See 7 C.F.R. § 205.605(b).

37. Despite this USDA's definition of Xanthan Gum as synthetic, Defendant labels and markets Log Cabin Syrup as "All Natural."

38. By information and belief, Defendant's Log Cabin syrup contains ingredients that are highly processed and/or are derived from corn, rice, soy or sugar all of which are likely GE.

Plaintiffs' Purchase of Defendant Pinnacle Food Group's Products

39. Plaintiff Kevin McNaught is the co-owner of Trevin Farms in Sudbury, Vermont.

40. Plaintiff Kevin McNaught purchased Log Cabin syrup.

41. Plaintiff Kevin McNaught purchased Log Cabin Syrup because he believed it to be truly "All Natural".

42. Plaintiff Kevin McNaught would not have purchased Log Cabin Syrup if he had known it contained synthetic and/or genetically engineered ingredients.

43. Plaintiff Kevin McNaught purchased Log Cabin Syrup labeled "All Natural" in Vermont for approximately $5.50 for the syrup.

44. At the time of purchase, Defendant labeled, marketed, advertised, and promoted its Log Cabin Syrup as "All Natural."

45. At the time of purchase, Defendant marketed its Log Cabin Syrup in a bottle mimicking that used to promote pure Vermont maple syrup.

46. As a result of this labeling, bottling, marketing, advertising, and promotion, Defendant charged a premium price for its Log Cabin Syrup product, as compared to similar synthetic brands, such as Aunt Jemima, while undercutting the prices of products containing pure Vermont maple syrup.

47. Similar syrup products to Log Cabin Syrup sell for approximately 50% less than Defendant's Log Cabin Syrup.

48. Pure Vermont maple syrup prices vary but are considerably higher than the price of Log Cabin Syrup, which misrepresents itself as "All Natural" and bears the same or substantially similar trade dress as pure maple syrup.

49. Despite the "All Natural" label, the ingredients list for the Log Cabin syrup makes no indication that Xanthan Gum is a USDA recognized synthetic ingredient.

50. Despite the "All Natural" label, Log Cabin Syrup fails to indicate whether it contains GE ingredients or components.

51. Plaintiff purchased this product based on the reasonable belief that the "All Natural" label was truthful and that it did not contain genetically engineered, genetically modified or synthetic ingredients.

52. Plaintiff would not have purchased this product had he known it contained synthetic and/or genetically engineered ingredients.

53. As a result of Defendant's misleading, inaccurate, and/or deceptive labeling, marketing, advertising, and promotion of its product, Plaintiff and members of

the Class suffered an ascertainable loss in that they paid a premium price for a product that they believed to be "All Natural" but received something less than and different from what was promised and bargained for, i.e. a product that was not "All Natural" because it contained ingredients likely derived from genetically engineered or modified sources as well as synthetic ingredients.

## CAUSES OF ACTION

54. Plaintiff repeats and re-alleges each and every allegation above and incorporate each and every allegation by reference herein.

55. Defendant markets, labels and sells Log Cabin Syrup as "All Natural".

56. Defendant recognizes the importance of labeling these products as "All Natural" as a beneficial marketing tactic.

57. Defendant also recognizes the importance of packaging its Log Cabin Syrup in containers mimicking real maple syrup as a beneficial marketing tactic.

58. In fact, however, this product is not "All Natural". Rather, they are, on information and belief, made up, at least in part, GE and synthetic ingredients.

59. Defendant fails to indicate on the label that the product contains genetically engineered or genetically modified ingredients that are not "natural" or that its Log Cabin Syrup contains at least one ingredient that the USDA defines as synthetic. See 7 C.F.R. §205.605(b).

60. In light of Defendant's knowledge that consumers will pay more for truly all natural products, Defendant has prominently labeled its Log Cabin Syrup as "All Natural."

61. Defendant sells this product as a beneficial alternative to similar products, at prices well below those of competitors selling products that do not have GE or synthetic ingredients.

62. Defendant deceives customers into believing that Log Cabin Syrup is made only from naturally occurring non-genetically engineered or modified ingredients as well as that Log Cabin Syrup does not contain synthetic materials.

63. Defendant also deceives customers into believing that Log Cabin Syrup is actually pure maple syrup, undercutting prices of its honest competitors.

64. The labeling and marketing claims are that the product named in this complaint is a healthy alternative, that it is derived from naturally occurring ingredients or materials and that they are not genetically engineered or synthetic. However, as set forth in this Complaint, this message is false, misleading, deceptive and unfair.

65. Defendant's labeling, marketing and advertising violates Vermont state law.

66. Vermont state law broadly prohibits unfair, deceptive or misleading business practices that have the tendency or capacity to deceive a reasonable consumer.

67. 9 V.S.A. § 2451 explains that the purpose of the VCPA is to "protect the public, and encourage fair and honest competition." Claiming their products are "All Natural" when they are in fact likely made up of artificially created genetically engineered or genetically modified ingredients or materials and synthetic ingredients both harms the public and represents *un*fair and *dis*honest competition on the part of the Defendant.

68. As a result of its unfair, deceptive and misleading marketing, Defendant has violated the VCPA.

69. Such acts of Defendant, as described above, and each of them, constitute violations of the VCPA.

70. The VCPA broadly prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce . . . ." 9 V.S.A. § 2453(a).

71. Plaintiff asserts this cause of action for violation of the VCPA.

72. At all material times, Defendant engaged in a scheme to offer the product named in this complaint as "All Natural" by way of, *inter alia*, commercial marketing and advertising, the Internet, product packaging and labeling. These materials misrepresented the true contents of this product.

73. Consumers such as Plaintiff necessarily and reasonably relied on Defendant's labeling, packaging and marketing of its Log Cabin Syrup.

74. The above described acts of the Defendant in marketing, packaging and labeling a product that is made up of or derived from artificially created GE and synthetic ingredients as "All Natural" was, and is, likely to deceive reasonable consumers including named Plaintiff and members of the Class, by obfuscating the true nature of the genetically engineered and synthetic ingredients contained in these products, all in violation of the VCPA.

75. As a result of the practices alleged above, Plaintiff and members of the class suffered a substantial injury by virtue of buying Log Cabin Syrup labeled and packaged as "All Natural." Plaintiff and other reasonable consumers would not have purchased or paid the premium price for this product absent the Defendant's unfair, deceptive and misleading marketing, labeling and packaging.

76. Plaintiff and members of the Class had no reasonable way to know that the product was not natural but contained GE and/or synthetic ingredients.

77. As a result of the business practices and acts described above, Plaintiff and members of the Class are entitled to an order enjoining such future conduct on the part of the Defendant, and such other judgments which may be necessary to disgorge the Defendant's ill-garnered gains and to restore any person in interest any money paid for the product described in this complaint as a result of the wrongful conduct of the Defendant.

78. Therefore, Plaintiff prays for relief as set forth below.

### FIRST CAUSE OF ACTION
### (ON BEHALF OF THE VERMONT CLASS)
### (Violation of Vermont Consumer Fraud Act)

79. Plaintiff repeats and re-alleges all preceding paragraphs, as if fully stated herein.

80. At all material times, Defendant engaged in a scheme to offer the Log Cabin Syrup named in this complaint as "All Natural" by way of, *inter alia*, commercial marketing and advertising, the Internet, product packaging and labeling. These materials misrepresented the true contents of its Log Cabin Syrup.

81. Consumers such as Plaintiff necessarily and reasonably relied on Defendant's labeling, packaging and marketing of this product.

82. The above described acts of the Defendant in marketing, packaging and labeling products that are derived from artificially created GE and/or synthetic ingredients as "All Natural" was, and is, likely to deceive reasonable consumers including named Plaintiff and members of the Class, by obfuscating the true nature of the genetically engineered and synthetic ingredients contained in Defendant's Log Cabin table syrup labed as "All Natural," all in violation of the VCPA.

83. VCPA broadly prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce . . ." 9 V.S.A. § 2453(a).

84. Plaintiff on behalf of himself and the class he represents asserts these claims, exercises his rights accorded him and seeks relief he is entitled to by VCPA.

## SECOND CAUSE OF ACTION
## (ON BEHALF OF THE VERMONT CLASS)
### (Breach of Express Warranty)

85. Plaintiff repeats and re-alleges all preceding paragraphs, as if fully stated herein.

86. Defendant provided Plaintiff and members of the Class with written express warranty that the above described product was "All Natural".

87. Defendant breached this warranty which resulted in substantial harm to the Plaintiff and members of the Class, who purchased and overpaid for the Defendant's product, which was not beneficial in that it was not "All Natural" as labeled.

88. As a result of Defendant's breach, Plaintiff and members of the Class have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as marketed and labeled by Defendant, and they were deprived of their bargain and spent money on products that did not have any value, had less value than warranted or that they would not have purchased and consumed had they know the true facts about them.

## THIRD CAUSE OF ACTION
## (ON BEHALF OF THE VERMONT CLASS)
### (Unjust Enrichment)

89. Plaintiff repeats and re-alleges all preceding paragraphs, as if fully stated herein.

90. As a result of Defendant's wrongful and deceptive conduct, Plaintiff and members of the Class have suffered a detriment while Defendant has received a benefit.

91. Plaintiff and members of the Class paid a premium price for Defendant's Log Cabin Syrup represented as "All Natural," but received something of lesser value – that is, a product that was not "All Natural."

92. In addition, Plaintiff and members of the Class paid valuable consideration for a product they believed to be "All Natural" based on the Defendant's product label and packaging.

93. Defendant has benefitted by receiving a premium price payment by the Plaintiff and members of the Class.

94. Defendant should not be allowed to retain the premium price profits generated from the sale of a product unlawfully marketed, advertised, and promoted.

95. Allowing Defendant to retain these unjust profits would offend traditional notions of justice and fair play and induce companies to misrepresent key characteristics of their products in order to increase sales.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff prays for relief as follows

1. An order certifying the Class, appointing Plaintiff as representative of the Class and designating their counsel as counsel for the Class;

2. A declaration that the Defendant has committed a violation of the law as alleged herein;

3. An order granting restitution and disgorgement pursuant to, without limitation, pursuant to 9 V.S.A. § 2465 on behalf of the Vermont Class;

4. An order granting declaratory and injunctive relief;

5. An order for compensatory damages and exemplary damages as determined at trial;

6. Judgment for interest at the legal rate on the foregoing sums;

7. Judgment for the costs of the suit, including reasonable attorney's fees, pursuant to 9 V.S.A. § 2465; and

8. Such further relief as the Court may deem proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demand a jury trial.

**DATED** in _Burlington_, Vermont this _13th_ day of __December_, 2012_

PLAINTIFF, by:

/s/Jared K. Carter
Jared Kingsbury Carter, Esq.
The Vermont Community Law Center
Attorney for Plaintiffs
P. O. Box 753
Burlington, VT 05402
207-319-6050


Kenneth Miller, Esq.
Law for Food, LLC
Attorney for Plaintiffs
782 Mountain Road
P.O. Box 444
Stowe, VT 05672
802-299-7532